Date signed June 24, 2008



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| DONNA MARIA BARNES-DUNCAN | : | Case No. 06-11284PM |
| | : | Chapter 13 |
| Debtor | : | |
| --------------------------------- | : | |
| AMERICAN BANK | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 07-0428PM |
| | : | |
| DONNA MARIE BARNES-DUNCAN | : | |
| et al. | : | |
| Defendants | : | |
| --------------------------------- | : | |

**MEMORANDUM OF DECISION**

     This case came before the court for trial on May 14, 2008, on the three-count Complaint filed by American Bank ("the Plaintiff"). Count I seeks a declaratory judgment that the Deed of Trust and Security Agreement dated July 13, 1990 ("the 1990 Deed of Trust"), a copy of which is attached to its Complaint, is a valid first lien on certain real property commonly known as 9010 Watkins Road, Gaithersburg, Maryland, 20879, that is owned by Donna Maria Barnes-Duncan ("the Debtor"). Count II seeks to modify the automatic stay of 11 U.S.C. § 362(a) so as to permit the Plaintiff to proceed to foreclose on the subject property. Count III seeks an equitable servitude on the subject property so as to bar the imposition of the automatic stay that would be triggered by a future bankruptcy filing. Besides the Debtor, Timothy Branigan, Chapter 13 Trustee, the Estate of Morris Battle, the United States of America, acting through the

Farm Service Agency ("FSA"), and Ashok Jashnani are named as Defendants. With the exception of the Chapter 13 Trustee, the remaining Defendants hold liens of record that are alleged to be junior to the lien of the Plaintiff.

The Debtor filed an Answer to the Complaint alleging that the security interest held by the Plaintiff terminated as a matter of law by virtue of the provisions of MD. CODE ANN., REAL PROP. § 7-106(c)(i)(2007). The Debtor filed a counterclaim against the Plaintiff seeking damages for various violations of the discharge injunction of 11 U.S.C. § 524(a)(2) entered March 4, 1993, in Case No. 91-44901. She also seeks a ruling that various agreements signed by her are null and void in that these agreements did not amount to enforceable reaffirmation agreements. The Debtor also filed a cross-claim against Ashok Jashnani ("Jashnani"), alleging various violations of §§ 12-401 to 12-415 of the Maryland Secondary Mortgage Loan Law ("MSML"). MD. CODE ANN., COM. LAW §§ 12-401 to 12-415 (2008). The cross-claim seeks a ruling both that Jashnani is not entitled to collect any interest on the loan and for penalties under § 12-413 of the MSML. Jashnani filed a late response to the cross-claim stating that he is not required to be licensed.

The FSA filed an answer asserting the validity of its lien securing a December 1, 1994, loan made by it. The documents supporting this allegation appear in the record as an attachment to Claim No. 4 filed May 8, 2006, in the sum of $238,395.00, with arrearage and other charges of $32,406.00. No one takes issue with the position of the FSA.

The Estate of Morris Battle did not file a response. Its lien is the subject of a separate adversary proceeding, *Donna Marie Duncan v. John Arness, III, Lane Plotkin, Liebner & Plotkin, P.C. and Estate of Morris Battle*, No. 06-1615PM, that was heard immediately following the conclusion of the trial of this adversary proceeding.

There are no disputed facts. All exhibits proffered by the parties were received in evidence, and the only testimony consisted of a statement of the approximate balance due to the Plaintiff and the opinion of an appraiser as to the fair market value of the subject property. This evidence was admitted without objection.

The court will begin with an analysis of the cross-claim against Jashnani. The particulars of this $25,000.00 loan made by Jashnani are set forth in the Debtor's Exhibit No. 1-4. The interest rate charged is 24% per annum. Were this mortgage paid out according to its terms, over the 20-year period, the Debtor would have paid finance charges of $94,544.00. After payment of

settlement charges of $1,657.70, that included a 2% loan discount of $500.00 credited to Jashnani; an escrow of taxes for 2004-2005 of $2,649.62; payoff of a tax sale to Montgomery County of $9,837.45; payoff of a second tax sale of $650.00; and courier and certified check charges of $50.00, the Debtor received $10,155.13.  Included among the "settlement charges" charged by Jashnani was an entry for payment of interest in advance of $345.20.  This charge by Jashnani disenabled him from charging interest in excess of 16% per annum because it violated the requirements of MD. CODE ANN. REAL PROP.§ 12-404(d)(2) (2005) of the MSML.  ("The lender does not contract for, charge, or receive any interest in advance, or any compounded interest[.]").

This violation triggers the imposition of the civil penalties provision of § 12-413 of the MSML that provides:

> Except for a bona fide error of computation, if a lender violates any provision of this subtitle he may collect only the principal amount of the loan and may not collect any interest, costs, or other charges with respect to the loan.  In addition, a lender who knowingly violates any provision of this subtitle also shall forfeit to the borrower three times the amount of interest and charges collected in excess of that authorized by law.

It follows that Jashnani's claim is limited to the principal amount of the loan of $25,000.00, minus $845.60 being the sum of the interest collected in advance and the loan discount of $500.00.  The court finds no evidence of a knowing violation of the provisions of the subtitle.

The court will now deal with the issue of the 1990 Deed of Trust that appears in this record as the Debtor's Exhibit No. 8.  That document is recorded among the Land Records of Montgomery County, Maryland, in Liber 9423, Folio 159.  The third paragraph of this instrument states:

> WHEREAS, for the terms of repayment of said sum with interest, Grantor has duly executed and delivered to Holder the Note of even date herewith, the entire unpaid balance of principal and interest thereof, if not sooner paid, being due on the 13th day of January, 1991[.]

The corresponding Promissory Note appears as the Debtor's Exhibit No. 7.

Under 11 U.S.C. § 524(a)(2), the Debtor's discharge, entered in her bankruptcy case filed October 15, 1991, discharged the obligation as a personal liability.  Anything that the Debtor did to reaffirm the debt was a nullity.  The required documents to accomplish reaffirmation were never filed with this court prior to her discharge.  This court never approved any reaffirmation

agreement.[1]  *See generally*, COLLIER ON BANKRUPTCY, *Requisites of an Enforceable Reaffirmation Agreement*, § 524-04[1] (15th ed. 2008); D.G. EPSTEIN, S.H. NICKLES AND J.J. WHITE, § 7-38 (1992); *Rein v. Providian Financial Corp.*, 270 F.3d 895, 899-901 (CA9 2001).

While the personal obligation of the Debtor to the Plaintiff was extinguished by the discharge, the lien survived and remained enforceable under state law.  *Wilding v. CitiFinancial Consumer Financial Srvs., Inc. (In re Wilding)*, 475 F.3d 428, 430 (CA1 2007); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89 (CA4 1995).

The controlling statutory provision concerning the efficacy of the 1990 Deed of Trust is MD. CODE ANN., REAL PROP. § 7-106(c)(2007) that provides:

> (c)(1) If a mortgage or deed of trust remains unreleased of record, the mortgagor or grantor or any interested party is entitled to a presumption that it has been paid if:
>
>> (i) 12 years have elapsed since the last payment date called for in the instrument or the maturity date as set forth in the instrument or any amendment or modification to the instrument and no continuation statement has been filed;
>>
>> (ii) The last payment date or maturity date cannot be ascertained from the record, 40 years have elapsed since the date of record of the instrument, and no continuation statement has been filed; or
>>
>> (iii) One or more continuation statements relating to the instrument have been recorded and 12 years have elapsed since the recordation of the last continuation statement.
>
> (2) Except as otherwise provided by law, if an action has not been brought to enforce the lien of a mortgage or deed of trust within the time provided in paragraph (1) of this subsection and, notwithstanding any other right or remedy available either at law or equity, the lien created by the mortgage or deed of trust shall terminate, no longer be enforceable against the property, and shall be extinguished as a lien against the property.
>
> (3)(i) A continuation statement may be filed within 1 year before the expiration of the applicable time period under paragraph (1) of this subsection.
>
>> (ii) A continuation statement shall:
>>
>>> 1. Be signed by:
>>>
>>>> A. The current mortgagee, if the instrument is a mortgage; or

---

[1] 11 U.S.C. § 524(c) lays out the requirements for a enforceable reaffirmation agreement.

> > > B. The current beneficiary or any one or more of the current trustees if the instrument is a deed of trust;
>
> > 2. Identify the original instrument by:
>
> > > A. The office, docket or book, and first page where the instrument is recorded; and
>
> > > B. The name of the parties to the instrument; and
>
> > 3. State that the purpose of the continuation statement is to continue the effectiveness of the original instrument.
>
> (iii) Upon timely recordation in the land records where the original instrument was recorded of a continuation statement under this subparagraph, the effectiveness of the original instrument shall be continued for 12 years after the day on which the continuation statement is recorded.
>
> (iv) A continuation statement is effective if it substantially complies with the requirements of subparagraph (ii) of this paragraph.

By its terms, the 1990 Deed of Trust secured the Promissory Note of even date with the entire balance being due on January 13, 1991. It is self-evident that the 1990 Deed of Trust falls squarely within the sights of § 7-106(c)(1). Twelve years elapsed since the last payment date. If no continuation statement was filed, the obligation is presumed paid.

The presumption found in § 7-106(c) is mandatory and not rebuttable. The court finds the governing rule of decision in the case of *Helman v. Kim*, 745 A.2d 451 (Md. App. 2000). An irrebuttable presumption is not so much a presumption but a rule of substantive law that defines issues in a particular case.[2] It is mandatory, and it occurs in both civil and criminal cases. *See Miller v. Graff*, 78 A.2d 220, 224 (Md. 1951)(a four year old child cannot be held guilty of contributory negligence as a matter of law); *Walker v. State*, 768 A.2d 631, 637-38 (Md.

---

[2]While it is true that irrebuttable presumptions are disfavored in law and must have some rational basis, the *Helman* opinion describes the legislative history of this amendment and the automatic termination of the mortgage lien. The ambiguity described in footnote 1 of *Helman* has no relevancy here inasmuch as the cause of action on the debt itself is defeated by the Debtor's discharge entered March 4, 1993.

2001)(reasonable mistaken belief as to a victim's age is not a defense to a statutory rape); Lynn McLain, 5 MARYLAND EVIDENCE, State and Federal § 303:1 (2007).

In the *Helman* case, in affirming an order granting summary judgment, the court concluded, "[t]he trial court correctly interpreted § 7-106(c) of the Maryland Code as providing for automatic termination of a mortgage lien when twelve years have elapsed since the termination date/last payment date of the mortgage without a continuation statement filed or an action instituted to enforce the mortgage." 745 A.2d at 457. The presumption of § 7-106(c) falls into the category of a rule of substantive law. It is conclusive. *See generally, Evans v. State*, 349 A.2d 300, 324-25 (Md. App. 1975), *aff'd*, 362 A.2d 629 (Md. 1976).

This does not end the inquiry as the court must determine whether the Plaintiff recorded a continuation statement that extended the life of the 1990 Deed of Trust under § 7-106(c)(3)(iv). Presumably, in support of this lifeline, the Plaintiff offered the following documents:

1. Deed of Removal and Substitution of Trustee filed March 9, 1995, with the Clerk of the Circuit Court for Montgomery County, Maryland;

2. Modification and Subordination Agreement filed March 9, 1995, with the Clerk of the Circuit Court for Montgomery County, Maryland;

3. Subordination Agreement filed March 9, 1995, with the Clerk of the Circuit Court for Montgomery County, Maryland; and

4. Financing Statement filed March 9, 1995, with the Clerk of the Circuit Court for Montgomery County, Maryland.

By no stretch of the imagination could any of these documents be construed as a continuation statement. The Plaintiff's Exhibit No. 2 reflects a payment of $200,000.00 to it from funds advanced by the Farmers Home Administration.[3] Of the $142,279.87 left owed to the Plaintiff, $98,000.00 was placed in first position and the remainder of $44,279.87 was placed in fourth priority after the $200,000.00 owed to the Farmers Home Administration and the lien securing the Estate of Morris Battle. There was not the slightest indication of any intention to create a continuation statement in 1995 so as to avoid the effectuation of the provisions of § 7-106(c) that would not have taken effect until January 12, 2003. Nor was any action brought to enforce the

---

[3]This was the forerunner of the FSA.

lien of the deed of trust. All the efforts of the plaintiff were in the nature of actions to collect the debt that had been discharged.

An appropriate order will be entered.


cc:  Plaintiff
     Plaintiff's Counsel
     Defendants
     Defendants' Counsel

**End of Memorandum of Decision**